UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 21-CV-009-CVE-SH<br>) |
| B&B HEAT & AIR, INC. and ANN KINSER, | )<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is plaintiffs' motion for summary judgment (Dkt. # 30). Plaintiffs Ohio Security Insurance Company (Ohio Security) and The Ohio Casualty Insurance Company (Ohio Casualty) filed this case seeking a declaratory judgment that they have no duty to defend or indemnify defendant B&B Heat & Air, Inc. (B&B) against claims filed by Ann Kinser in state court concerning the allegedly negligent installation of a heating, ventilation, and air conditioning (HVAC) system. The parties dispute whether an exclusion in the insurance policy concerning the dispersal of "pollutants" applies to Kinser's claims. Plaintiffs argue that the policy language is clear and unambiguous that any bodily injury caused by the dispersal of pollutants is excluded from coverage under the policy. B&B argues that the policy language is ambiguous as applied to the facts of this case, because B&B did not use or apply any "pollutants" during its work and B&B had a reasonable expectation that it would be covered for the completed installation of an HVAC system.

I.

B&B is an HVAC contractor operating in Oklahoma, and B&B purchased a general commercial liability (GCL) policy from Ohio Security that was in effect from June 16, 2017, to June 16, 2018. Dkt. # 2-1, at 26. B&B also purchased a commercial umbrella policy from Ohio Casualty covering the same time period. Dkt. 2-2, at 8. The GCL policy had a coverage limit of $1 million per occurrence, with a general aggregate limit of $2 million. Dkt. # 2-1, at 40. Ohio Security agreed to "pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at 48. This includes a duty to defend B&B against any "suit" seeking such damages, but Ohio Security has no obligation to defend B&B against claims for which the insurance does not apply. Id. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 61. B&B purchased "completed operations" coverage as part of the policy with a $2 million aggregate policy limit. Id. at 27, 40-44. Completed operations coverage applies to claims for bodily injury or property damage "occurring away from premises you own or rent and arising out of 'your product' or 'your work . . . .'" Id. at 63. This coverage applies only to completed products or work that are no longer in the possession or control of B&B. Id. "Your work" is defined as "work or operations performed by you or on your behalf [and] [m]aterials, parts or equipment furnished in connection with such work or operations." Id. at 64. The GCL policy specifically references the "products completed" coverage in at least two exclusions, and the policy does not contain any express or implied representation that exclusions in the policy are not applicable to "products completed" coverage. Dkt. # 2-1, at 52 (stating that paragraph six of the "Damage to Property" exclusion does not apply to products-completed operation hazard and the "Damage to Your Work"

exclusion precludes coverage for property damage to "'your work' arising out of it and any part of it and included in the 'products-completed operations hazard'").

The umbrella policy issued by Ohio Casualty applies when B&B becomes "legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of 'bodily injury' . . . that takes place during the Policy Period and is caused by an 'occurrence'" for amounts in excess of the "retained limit." Dkt. # 2-2, at 12. In this case, the umbrella policy becomes applicable if B&B becomes liable for amounts in excess of the policy limits of the GCL policy.

The GCL policy contains numerous exclusions to coverage, including a pollution exclusion for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" Id. at 50. The GCL policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Id. at 63. The pollution exclusion included in the GCL policy is modified by a total pollution exclusion that states as follows:

> This insurance does not apply to:
>
>> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time . . . .

Id. at 71. The GCL policy also contains an exclusion for "silica or silica-related dust," and the GCL policy does not apply to claims for "'bodily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust.'" Id. at 76. "Silica" is defined as "silicon dioxide (occurring in crystalline, amorphous and impure forms),

3

silica particles, silica dust or silica compounds," and "'[s]ilica-related dust' means a mixture or combination of silica and other dust or particles." Id. at 76.

In April 2018, B&B installed a new HVAC system in the attic of Ann Kinser's home in Grove, Oklahoma. Dkt. # 2-3, at 3. Kinser alleges that B&B failed to ensure that the new HVAC system was properly sealed in at least two locations and, due to B&B's negligent installation, the "HVAC system would pull small, poisonous, fibrous pieces of fiberglass installation from the attic and distribute it throughout [Kinser's] home." Id. Kinser alleges that B&B unsuccessfully attempted to repair the faulty installation of the HVAC system, and she claims that she inhaled particles of fiberglass anytime she was inside her home. Id. Kinser claims that she suffered from serious health problems and was forced to move out of her home. Id. Kinser retained counsel and B&B received notice of a potential lawsuit by Kinser, and B&B contacted Ohio Security upon learning of the potential litigation. Dkt. # 30-2, at 2. Ohio Security declined to retain counsel to represent B&B, because Ohio Security had no duty to defend B&B until Kinser actually commenced litigation. Id. at 7. Ohio Security also advised B&B that it likely had no duty to indemnify B&B against any claims brought by Kinser, because the pollution and silica dust exclusions appeared to be applicable based on Kinser's allegations. Id. at 8. Kinser subsequently filed a lawsuit against B&B in Delaware County District Court alleging a negligence claim and she sought damages in excess of $75,000. B&B again contacted Ohio Security and requested that Ohio Security defend B&B against Kinser's negligence claim. Ohio Security sent a letter (Dkt. # 30-3) denying B&B's request for defense and indemnification against Kinser's negligence claim, inter alia, based on the total pollution and silica dust exclusions in the GCL policy. Dkt. # 30, at 10.

Ohio Security and Ohio Casualty filed this case seeking a declaratory judgment that they have no obligation to defend or indemnify B&B against Kinser's negligence claim. Plaintiffs allege that "many" exclusions in the policies apply to Kinser's claim, but plaintiffs' complaint focuses on the applicability of the pollution exclusion in the GCL policy. Dkt. # 2, at 4. Plaintiffs filed a motion for judgment on the pleadings (Dkt. # 30), and B&B asked the Court to convert the motion into a motion for summary judgment. Dkt. # 53. The Court granted B&B's request to convert the motion for judgment on the pleadings into a motion for summary judgment, and the parties filed supplemental briefing with evidence outside of the pleadings.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

5

is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiffs argue that they have no duty to defend or indemnify B&B against Kinser's negligence claim, because the claim falls within the total pollution exclusion in the GCL policy. B&B responds that the pollution exclusion is ambiguous as applied to the facts of this case, and B&B had a reasonable expectation that it would be covered for the type of claim asserted by Kinser. The parties focus heavily on whether the total pollution exclusion is applicable, but this skips a necessary part of the analysis of any insurance coverage issue. The initial burden is on the insured to establish that its claim is covered under the policy, and the Court will proceed to consider whether an exclusion applies only after this initial burden is satisfied. Magallan v. Zurich American Ins. Co., 2017 WL 4012964, *4 (N.D. Okla. Sep. 12, 2017). If the insured establishes that it presented a covered claim to the insurer, the burden shifts to the insurer to establish that the loss falls within an exclusion to coverage under the policy. Id.

Commercial insurance policies "contain[] two basic duties—the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 302-

03 (Okla. 1996). "The duty to defend is separate from, and broader than, the duty to indemnify, but the insurer's obligation is not unlimited. The defense duty is measured by the nature and kinds of risks covered by the policy as well as by the reasonable expectations of the insured." Turley, 928 P.2d at 303-04 (footnotes omitted). In Oklahoma, "an insurer has a duty to defend if the facts raise the mere 'potential of liability.'" Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co., 720 F.3d 798, 805 (10th Cir. 2013) (citing Turley, 928 P.2d at 303). "To have the 'potential of liability,' the 'complaint [must] state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery.'" Idg, Inc. v. Cont'l Cas. Co., 275 F.3d 916, 920 (10th Cir. 2001) (quoting 7C Appleman, Insurance Law & Practice § 4683.01 at 67 (Berdal ed.1979)); see also Turley, 928 P.2d at 303 n.14 (same).

"The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." Turley, 928 P.2d at 303-04; see Idg, 275 F.3d at 920; see also Above It All Roofing & Constr., Inc. v. Sec. Nat'l Ins. Co., 285 F. Supp. 3d 1224, 1241 (N.D. Okla. 2018). "[A]n insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct." Automax, 720 F.3d 798, 805 (citing Westport Ins. Corp. v. Napoli, Kaiser & Bern, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (applying New York law); Gray v. Zurich Ins. Co., 419 P.2d 168, 177 (Cal. 1966)). "[T]he underlying facts, and not the allegations in the [underlying action's] complaint, are dispositive of the duty to defend." Id. "Nothing more is required to trigger the duty to defend" where "the facts indicate that [the insured] may have been negligent." Id. "[O]nce an insurer's duty to defend is

7

triggered, it must defend all the claims in a lawsuit." Id. at 806. Although "[an insurer] must defend [its insureds] in Oklahoma state court against all claims, it need only indemnify claims falling within the policy's scope." Utica Mut. Ins. Co. v. Voyles, 277 F. App'x 809, 816 (10th Cir. 2008).

      This is a diversity case requiring the Court to construe disputed terms of an insurance policy as required by state law. See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation, 529 F.3d 916, 920 (10th Cir. 2008); Houston General Ins. Co. v. American Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)).

B&B argues that the Oklahoma courts apply the doctrine of reasonable expectations when construing ambiguous or technical language in an insurance policy. The doctrine of reasonable expectations is an interpretative tool used to discern the intent of the parties "when the policy language is ambiguous or when an exclusion is 'masked by technical or obscure language' or 'hidden in a policy's provisions.'" American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004) (quoting Max True Plastering Co, 912 P.2d at 870). Whether policy language is ambiguous is a question of law for the court to decide, and the "test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'" Edens v. The Netherlands Ins. Co., 834 F.3d 1116, 1121 (10th Cir. 2016) (quoting Cranfill v. Aetna Life Ins. Co., 49 P.3d 703, 706 (Okla. 2002)). However, courts must not "indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts." Broom v. Wilson Paving & Excavating, Inc., 356 P.3d 617, 628 (Okla. 2015).

**A.**

The Court will initially consider whether B&B has met its burden to show that it had a covered claim under the GCL policy. The GCL policy provides that Ohio Security agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. # 2-1, at 48. The insurance "applies" if the bodily injury or property damage is caused by an "occurrence" and the bodily injury or property damage occurs during the policy period. Id. The GCL policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 63. In the underlying tort claim giving rise to B&B's insurance claim, Kinser alleges that B&B

9

negligently installed a new HVAC system and the HVAC system pulled fiberglass installation out of the attic of her home. Dkt. # 2-3, at 3. Kinser claims that she inhaled "poisonous fiberglass" and she sustained serious personal injuries as a result of B&B's conduct. The Court finds that B&B has met its initial burden to show that Kinser's claims against B&B fall within the scope of the GCL policy. Kinser plainly alleges that B&B engaged in negligent conduct by failing to properly seal the new HVAC system, and plaintiffs do not argue that Kinser's injuries were caused by intentional conduct on the part of B&B. Kinser's allegations of breathing problems also qualify as "bodily injury" under the GCL policy, and Kinser's negligence claim against B&B arose during the policy period.

B&B argues that it purchased separate "products completed" coverage and the implication of this argument is that the exclusions in the GCL policy do not apply to "products completed" coverage. Dkt. # 59, at 15-16. Plaintiffs respond that there is no separate "products completed" coverage and this is simply part of the GCL policy, and the exclusions included in the GCL policy are applicable to claims that could fall within the definition of "products completed." Dkt. # 62, at 21. The definition of "products-completed operations hazard" is contained with the definitions section of the GCL policy, and it extends coverage under the GCL policy to claims of "'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' . . . ." Dkt. # 2-1, at 63. There is a separate premium charged for "products/completed operations" and for "premise/operations," but there is no separate section of the policy for "products completed" coverage. The definition of "products-completed operations hazard" incorporates the definitions of "bodily injury," "property damage," "your product," and "your work" from definitions section of the GCL policy. The "damage to property" exclusion states

10

that "paragraph (6) of this exclusion does not apply to 'property damage" included in the 'products-completed operations hazard.'" Id. at 52. The "damage to your work" exclusion also provides that the "exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id.

There is nothing in the language of the "products-completed" definition or the overall structure of the GCL policy suggesting that this is a separate or independent basis for coverage from the GCL policy itself. The definition of "products-completed operations hazard" is contained within the general definition section for the GCL policy, and the definition of "products-completed operations hazard" incorporates other terms that are used throughout the GCL policy to explain what is actually covered or excluded. In other words, the "products completed" coverage would make no sense without reference to the definitions provided in the GCL policy. B&B did pay an additional premium for "products completed" coverage, but this simply provided B&B coverage in the event that it was sued for damages due to an event that arose after B&B completed its work. Even though this is not a separate basis for coverage, B&B has shown that it is likely to have a covered claim under "products completed" coverage provided by the policy.

**B.**

B&B has established that it made a potentially valid claim for coverage under the GCL policy, and the burden shifts to plaintiffs to show that an exclusion to coverage applies. Plaintiffs argue that the total pollution exclusion in the GCL policy is clear and unambiguous and it bars coverage for Kinser's negligence claim concerning B&B's installation of an HVAC system. The GCL policy contains a pollution exclusion for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of

11

'pollutants.'" Id. at 50. The GCL policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Id. at 63. The pollution exclusion included in the GCL policy is modified by a total pollution exclusion that states as follows:

> This insurance does not apply to:
>
>> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time . . . .

Id. at 71.

B&B argues that the Oklahoma Supreme Court has found that pollution exclusions can be ambiguous depending upon the circumstances giving rise to the underlying tort claim, and there is no evidence that B&B brought any pollutant to Kinser's home as part of the installation of the new HVAC system. The Oklahoma Supreme Court has issued several decisions concerning the applicability of a pollution exclusion in a GCL policy. In Bituminous Casualty Corp. v. Cowen Constr. Co., 55 P.3d 1030 (Okla. 2002), the Oklahoma Supreme Court received certified questions from the Northern District of Oklahoma concerning the applicability of a pollution exclusion to claims of lead poisoning. The lead poisoning occurred following the construction of a kidney dialysis center at St. John Medical Center (St. John) in Tulsa, Oklahoma, and St. John was sued by patients who were exposed to lead. Id. at 1032. St. John brought third-party claims against the contractor who built the kidney dialysis center, and the contractor sought defense and indemnification from its GCL insurer, Bituminous Casualty Corporation (Bituminous). Id. Bituminous argued that it had no duty to defend or indemnify the contractor due to a pollution

exclusion in the GCL policy, and the contractor responded that the pollution exclusion applied only to traditional "environmental" claims. Id. at 1035. The policy excluded coverage for "[b]odily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," and the Oklahoma Supreme Court found that this exclusion was clear and unambiguous. Id. at 1034. The insured's argument that the exclusion applied only to traditional environmental pollution claims was a "strained construction of relevant policy language," and the exclusion plainly applied to any claims for bodily injury caused by the discharge or release of a pollutant. Id. at 1035.

The Oklahoma Supreme Court subsequently considered the applicability of a pollution exclusion in the context of an earthquake-related claim against an oil and gas producer. In National American Insurance Company v. New Dominion, LLC, 499 P.3d 9 (Okla. 2021), New Dominion, LLC (New Dominion) purchased a GCL insurance policy from National American Insurance Company (NAIC) and the policy contained a total pollution exclusion that excluded coverage for bodily injury or property damage "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Id. at 16. New Dominion was sued for damages following an earthquake, and the plaintiff alleged that New Dominion's operation of wastewater injection wells caused the earthquake. Id. at 14. NAIC denied coverage, in part, based on the total pollution exclusion. Id. New Dominion argued that the definition of "pollutant" was ambiguous as applied to the facts of the case, and it claimed that it reasonably expected that the total pollution exclusion would apply only if the tort plaintiff's harm was caused by the irritating or contaminating nature of the substance. Id. at 16. NAIC responded that the Oklahoma Supreme Court had previously found a similar pollution

exclusion clear and unambiguous in Bituminous Casualty, and it argued that wastewater plainly qualified as a pollutant under the GCL policy. Id. at 17. The Oklahoma Supreme Court determined that pollution exclusions were intended to apply to "pollution events," and NAIC was offering an "absurdly expansive" interpretation of the exclusion in order to unreasonably limit coverage under the policy. Id. at 18. Although there was no dispute that wastewater qualified as "waste," the injury alleged by the tort plaintiff was not caused by the irritating or contaminating nature of the wastewater, and nature of the substance being used in the injection wells was not at issue in the claims against New Dominion. Id. at 17-18. New Dominion could reasonably have expected that the total pollution exclusion would not bar coverage for earthquake-related claims, although coverage was ultimately denied under a separate subsidence exclusion. In a second decision on a similar earthquake-related insurance claim, the Oklahoma Supreme Court found that a similar pollution exclusion did not apply to claims that wastewater injection wells caused seismic activity. Crown Energy Company v. Mid-Continent Casualty Co., 511 P.3d 1064 (2022).

In this case, the "pollutant" at issue is fiberglass particles from Kinser's attic that were allegedly pulled into the ventilation system of her home by the HVAC system that was installed by B&B. The GCL policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Dkt. # 2-2, at 63. B&B does not contest that fiberglass particles qualify as a "pollutant" or that Kinser's injuries were caused by the irritating or contaminating nature of the fiberglass. However, B&B argues that the total pollution exclusion is ambiguous as applied to the facts of this case. B&B asserts that it had a reasonable expectation that the total pollution exclusion would not apply to its "normal business activities," and B&B claims that it had no reason to believe that the total pollution exclusion would

bar coverage for tort claims based on pre-existing pollutants in Kinser's home that B&B did not use as part of its work.[1] Dkt. # 36, at 7.

The Court will initially consider B&B's argument that the total pollution exclusion applies only when the pollutant is supplied by B&B or used as part of B&B's normal business activities. The relevant policy language provides that the GCL policy does not provide coverage to claims of "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time . . . ." Dkt. # 2-1, at 71. B&B claims that it reasonably believed that the GCL policy applied to its normal business activities, such as installing an HVAC system, and B&B does not handle any substance that could be classified as a "pollutant" as part of installing an HVAC system. Dkt. # 59, at 22. The doctrine of reasonable expectations is an interpretative tool used to interpret insurance policies when the language of a policy is "susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person." Edens, 834 F.3d at 1121. However, the Oklahoma Supreme Court has cautioned that the doctrine of reasonable expectations does not permit courts to engage in "forced or constrained interpretations to create and then to construe ambiguities in insurance contracts" or alter the terms of a policy to favor a particular party. Max True Plastering Co., 912 P.2d at 869. The total pollution exclusion in the parties' GCL policy applies to claims of bodily injury that would not have occurred "in whole or in part but for the actual,

---

[1] B&B could also be arguing that the total pollution fails to define the terms "discharge, dispersal, seepage, migration, release or escape," and this creates an ambiguity in the total pollution exclusion that should be construed in favor of B&B. Id. at 13-15. This argument is not well developed in B&B's briefing and, in any event, the argument is meritless. It is not necessary for an insurance policy to define every word used in the policy, and the terms at issue are not technical or complex words that are beyond the understanding of an ordinary person.

alleged or threatened discharge [or] dispersal" of a pollutant, and there is no policy language suggesting that the exclusion applies only when the insured uses or supplies the pollutant in the ordinary course of its business. B&B fails to explain how the language of the policy would lead a reasonable person to believe that the total pollution exclusion applies only when B&B uses the pollutant as part of its work, and the Court may not rely on a strained interpretation of the policy to find that an ambiguity exists. The Court rejects B&B's argument that the total pollution exclusion is ambiguous as to whether the insured must use the pollutant as part of its work, and the Court finds that the policy language does not support a reasonable belief on the part of an insured that the total pollution exclusion applies only when the insured uses or supplies the pollutant as part of its work.

The decisions of the Oklahoma Supreme Court support plaintiffs' position that the total pollution exclusion is applicable under the circumstances and that the exclusion is not ambiguous as applied to the facts of this case. Bituminous Casualty established that pollution exclusions can apply outside of traditional environmental pollution cleanup scenarios, and the fact that B&B was engaging in its normal business activities of installing an HVAC system does not preclude application of the total pollution exclusion. The Oklahoma Supreme Court twice found that a pollution exclusion was ambiguous in the context of arguments raised by insurers that wastewater used in injection wells was a "pollutant," because the underlying claims giving rise to the insurance dispute had nothing to do with the irritating or contaminating nature of the pollutant itself. Neither National American Insurance Co. or Crown Energy Co. provides any support to B&B's argument that the total pollution exclusion is ambiguous when applied to the facts of this case and, to the contrary, both cases support plaintiffs' position that the exclusion is applicable. Kinser's claims are based wholly on the irritating or contaminating nature of the fiberglass particles that B&B allegedly

16

caused to be dispersed throughout Kinser's home, and the ambiguity found by the Oklahoma Supreme Court in National American Insurance Co. and Crown Energy Co. does not exist under the facts of this case.

B&B raises additional arguments in its supplemental pleading (Dkt. # 59) following the conversion of plaintiffs' motion into a motion for summary judgment. B&B argues that a claims representative initially told B&B that Kinser's negligence claim likely fell with the scope of "products completed operation" coverage and that the total pollution exclusion "[l]ikely doesn't apply" because the "Insured doesn't handle any pollutants." Dkt. # 32-1, at 2-3. B&B also argues that plaintiffs conducted an inadequate investigation, and plaintiffs have no claims manual providing guidance on how the total pollution exclusion should be interpreted. Dkt. # 59, at 14. However, these issues have no bearing on the Court's interpretation of the insurance policy. The issues raised by B&B could potentially be relevant to a bad faith claim in which plaintiffs' claims handling practices were a relevant consideration but, in this case, the Court is simply applying the facts to the plain language of the insurance policy to determine if plaintiffs have a duty to defend or indemnify B&B. B&B has also cited no authority suggesting that an insurer's initial assessment of an insurance claim has any binding effect on an insurer if a subsequent investigation reveals that the insured's claim is not covered. The document (Dkt. # 32-1) cited by B&B states that the total pollution exclusion might not apply, but the claims representative identified other exclusions or limitations that might reduce or wholly eliminate coverage as to Kinser's negligence claim. Dkt. # 32-1, at 3. The claims representative also identified additional steps that would have to be taken to evaluate B&B's demand for defense and indemnification, and the claims representative made no statement suggesting that she was making a final coverage determination that would be binding on plaintiffs.

The Court does not find that plaintiffs' actions upon receipt of B&B's claim or plaintiffs' claims handling practices have any relevance to the interpretation of the GCL policy.

The Court concludes that plaintiffs have met their burden to show that the total pollution exclusion in the GCL policies applies, and plaintiffs have no duty to defend or indemnify B&B against the claims brought by Kinser. B&B has shown that it initially presented a covered claim under the GCL policy, but plaintiffs have met their burden to show that the total pollution exclusion bars coverage for B&B's claim under the GCL policy. The Court finds that the total pollution exclusion is plain and unambiguous as applied to Kinser's negligence claim against B&B, and Kinser will be able to recover only if she shows that B&B caused a pollutant, fiberglass particles, to be dispersed throughout her home. This means that there is no possibility than Kinser could be asserting a covered claim that requires plaintiffs to provide a defense to B&B, and the Court can resolve the issues of defense and indemnification at this stage of the case. Plaintiffs' motion for summary judgment (Dkt. # 30) is granted and the Court will enter declaratory judgment in favor of plaintiffs that they have no duty to defend or indemnify B&B against Kinser's negligence claim.

**IT IS THEREFORE ORDERED** that plaintiffs' motion for summary judgment (Dkt. # 30) is **granted**. A separate judgment is entered herewith.

**DATED** this 23rd day of November, 2022.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE